UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

JUDY A. BROWNE,

                Plaintiff,

        V.

JO ANNE BARNHART[1],
Commissioner of Social Security,

              Defendant.

―――――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

06-CV-1515
(LEK/VEB)

## I. INTRODUCTION

In December of 2004, Plaintiff Judy A. Browne filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since May 1, 2004, primarily due to back and neck pain and related conditions.  Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorneys, Hinman, Howard & Kattell, LLP, Eugene D. Faughnan, Esq., of counsel, commenced this action on December 18, 2006, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. The Clerk of the Court is hereby directed to substitute Commissioner Astrue in place of his predecessor, Jo Anne B. Barnhart, as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of Civil Procedure.

Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The relevant procedural history maybe summarized as follows:  Plaintiff applied for DIB and SSI benefits on December 7, 2004, alleging that she had been unable to work since May 1, 2004.  (T[2] at 19, 55-60).  The application was denied on March 25, 2005.[3](T at 36-39).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on April 19, 2005.  (T at 19, 34).  On January 31, 2006, Plaintiff appeared with counsel, John Denman, Esq. at a hearing before ALJ Robert Gale.  (T at 221-42).  Plaintiff and her attorney appeared via video conference from Binghamton, New York.  ALJ Gale conducted the hearing from a location in Syracuse, New York.  (T at 19). On July 27, 2006, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 19-25).  ALJ Gale's decision became the Commissioner's final decision on October 26, 2006, when the Appeals Council denied Plaintiff's request for review.  (T at 4-6).

Plaintiff commenced this action on December 18, 2006. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on May 18, 2007. (Docket No. 10).  The Commissioner filed a Memorandum of Law/Motion for Judgment on the Pleadings on August 14, 2007.  (Docket No. 15).

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[3]The ALJ's decision states that Plaintiff's original denial of benefits was March 25, 2005.  See (T at 19).  The date on the "Explanation of Determination" of the denial in the Administrative Transcript is March 22, 2005.  See (T at 33).  However, the date stamp, although faded and difficult to read, on the initial denial appears to also be March 25, 2005.  (T at 29).  Therefore, the Court will use the March 25, 2005 date as the initial denial date.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.      Analysis**

**1.      Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 21).  Further, the ALJ found that Plaintiff has two impairments (low back and neck pain) considered "severe" under the applicable Social Security Act Regulations (the "Regulations").  (T at 21).  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations. (T at 22).

After reviewing the medical evidence, the ALJ concluded that Plaintiff "has the residual functional capacity to perform a wide range of sedentary work." (T at 22).   The ALJ found that Plaintiff can "lift and carry up to 10 pounds occasionally, can stand or walk for up to 2 hours, and can sit for up to 6 hours of an 8-hour workday."  (T at 22).   In addition, the ALJ determined that Plaintiff can "push or pull up to 10 pounds occasionally," but "cannot perform work that requires ladders, scaffolds, balancing, crouching or crawling and she can only occasionally performing (sic) stooping and kneeling." (T at 22).

The ALJ found that Plaintiff is unable to perform her past relevant work as a fast food grill cook, but found that she would be able to perform her past relevant work as a telephone salesperson.  (T at 24).   The ALJ noted that Plaintiff's work as a telephone salesperson only required sitting and no lifting or carrying.  (T at 24).  Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 24).  The ALJ also found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 24).

As noted above, the ALJ's decision became the Commissioner's "final" decision when the Appeals Council denied Plaintiff's request for review.  (T at 4-6).

### 2.     Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers four principal arguments in support of her position.  First, Plaintiff argues that the ALJ did not give sufficient weight to the opinions of her treating physicians.  Second, Plaintiff contends that the ALJ failed to properly assess her subjective testimony regarding pain and disabling symptoms.  Third, she asserts that the ALJ failed to properly determine her residual functional capacity.  Fourth and finally, Plaintiff argues that the ALJ improperly failed to obtain evidence from a vocational expert and therefore, there is no substantial evidence to support the ALJ's conclusion that there is significant work in the national economy that Plaintiff could perform.  This Court will address each argument in turn.

### a.     Consideration of Treating Physicians' Opinions

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

In the present case, Plaintiff asserts that the ALJ improperly discounted evidence from two of her treating physicians, Dr. Kevin Gallagher and Dr. Kent Struck. (Docket No. 10 at 9-11). Plaintiff began treating with Dr. Gallagher in early 2005. (T at 157, 160). Following his initial examination, Dr. Gallagher stated that Plaintiff had "some limitations," "bulging disks" and had "tingling intermittently down her left arm." (T at 160). He stated that physical therapy "seems to give [Plaintiff] great relief." (T at 160). Dr. Gallagher prescribed Naprosyn for Plaintiff. (T at 160).

Dr. Gallagher continued to treat Plaintiff and noted after a June 23, 2005 appointment that Plaintiff's back pain caused her to leave work on June 6, 2005. (T at 159). Dr. Gallagher stated that Plaintiff's pain improved "somewhat" after being out of work. (T at 159). He noted that she had "been taking Celebrex and chlorzoxaxone," which gave her some relief. (T at 159). Dr. Gallagher planned to refer Plaintiff for further physical therapy, and prescribed wrist braces for her carpal tunnel syndrome. (T at 159). Later, on September 22, 2005, Dr. Gallagher stated that Plaintiff still has neck pain that goes down her arms. (T at 181). He opined that Plaintiff "should not begin [a] work program until she had a functional capacity study performed." (T at 181).

8

Dr. Kent Struck completed a Medical Source Statement of Ability to Do Work-Related Activities form on January 25, 2006, in which he opined that Plaintiff could occasionally lift and/or carry ten (10) pounds, frequently lift and/or carry five to seven (5 - 7) pounds, stand and/or walk for two to three (2 -3) hours total in an eight (8) hour workday for no more than one (1) hour at a time, and sit for four (4) hours total in an eight (8) hour work day for no more than forty-five (45) minutes at a time. (T at 195 - 196).  Dr. Struck opined that Plaintiff could occasionally climb, balance, stoop, crouch, kneel and crawl.  (T at 196). Plaintiff's ability to push or pull was also limited and he noted her spinal stenosis at C-4 through C-7 and disc protrusions at C-6 through C-7.  (T at 197).

The ALJ afforded "minimal weight" to Dr. Struck's opinion, stating that "[t]here is nothing to indicate that this physician ever examined the claimant."  (T at 23).  Plaintiff asserts that Dr. Struck is the only physician who opined a residual functional capacity and therefore it was improper to dismiss his opinion. (T at 11).  However, Plaintiff has not pointed to any evidence in the record that would suggest Dr. Struck ever treated her. Plaintiff simply asserts that Dr. Struck has "seen Claimant over the course of a number of years" without any citation to the record to support this claim.  (Docket No. 10 at 11).  As such, this Court finds that Plaintiff failed to establish that Dr. Struck was a treating physician.  Thus, the ALJ did not err by declining to give Dr. Struck's opinion controlling or extra weight.  Further, the ALJ's decision to afford "minimal weight" to Dr. Struck's findings was proper in that those findings did not appear to be well-supported by other medical evidence in the record.

There is no dispute that Dr. Gallagher was a "treating physician." With respect to the weight the ALJ afforded to Dr. Gallagher's opinion, the ALJ stated that he was affording

"considerable weight" Dr. Gallagher's examination report at Exhibit 6F (T at 158-160) of the record and "minimal weight" to his report at Exhibit 9F (T at 168-180). (T at 23). Plaintiff asserts that the ALJ "did not have a proper basis to pick and choose the reports of Dr. Gallagher[.]" (Docket No. 10 at 10-11). However, the ALJ is not required to accept all of the treating physician's findings or opinions and is, in fact, obligated to consider whether each finding or opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).

The examination reports contained in Exhibit 6F (T at 158-160) relate to examinations triggered by Plaintiff's complaints of back and neck pain. Dr. Gallagher's reports contained the results of objective tests performed as a result of those complaints. As such, the ALJ properly decided to give appropriate weight to those results and Dr. Gallagher's findings as set forth in the examination reports.

However, the reports contained in Exhibit 9F (T at 168-180) relate to follow-up examinations for Plaintiff's diagnosis of gastroesophageal reflux disease ("GERD"), which the ALJ found to be a non-severe impairment. The very sparse progress notes do not appear to reflect any objective tests or other determinations relevant to Plaintiff's medically determined severe impairments. As such, the ALJ did not err by deciding these reports were only entitled to "[m]inimal" weight. Indeed, other than the bare assertion that the ALJ should not have discounted this particular set of reports, Plaintiff offers no argument concerning how the information contained in those reports even arguably undermines the ALJ's ultimate findings.

### b.    Improper Discounting of Subjective Evidence

Plaintiff asserts that the ALJ improperly discounted her allegations of disabling pain and other non-exertional impairments.  Plaintiff testified at the hearing, explaining that she experienced constant lower back pain and frequent neck pain, with bursitis in her shoulders.  (T at 215-216).  She also described headaches, carpal tunnel in her hands, fractured ankle numbness and tingling in her left foot, headaches, and problems with balance. (T at 216-217).  Plaintiff testified that her medication causes her to feel dizzy, tired, and sleepy.  (T at 219).

Plaintiff testified that she was able to sit and stand for forty-five (45) minutes to an hour before she had to change positions, and walk approximately two (2) blocks before stopping.  She explained that the maximum weight she could lift on an occasional basis is seven (7) to ten (10) pounds. (T at 222).  Plaintiff testified that she performs light housework, cooking, but spends most of the day watching television.  (T at 220-221).

The ALJ assigned "considerable weight" to Plaintiff's treating physician, Dr. Gallagher's assessment that Plaintiff suffered from carpal tunnel syndrome, lower back pain, and that an x-ray "showed degenerative changes in her lower back with some spurring."  (T at 23, 159). Regarding Plaintiff's testimony, the ALJ concluded that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (T at 23).  However, he determined that Plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms" were "not entirely credible." (T at 23).   The ALJ indicated that he had "considered all symptoms and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (T at 22).

Courts in the Second Circuit have determined pain is an important element in DIB

11

and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

In this case, there is no question Plaintiff's low back and neck pain are severe impairments. The question is whether her reported symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record. Thus, the ALJ considered Plaintiff's testimony about the timing, type and nature of the symptoms reported, the medication and other treatment Plaintiff used to alleviate her symptoms, as well as any other measures she used to relieve pain, and her activities of daily living. (T at 21-23). See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

As an example of the facts included in the ALJ's evaluation, Stephen Walker, a treating physician's assistant, noted that Plaintiff had no limitation with regard to her ability to stand/walk or sit/stand. (T at 127). Walker opined that Plaintiff could occasionally lift and carry up to thirty (30) pounds. (T at 127). Dr. Khalid Sethi, Plaintiff's treating neurosurgeon, examined Plaintiff and noted that physical therapy was "working well" and that her symptom complex was "tolerable." (T at 145). Dr. Sethi further noted that Plaintiff had "fairly good strength." (T at 145).

12

The ALJ also examined how Plaintiff's activities of daily living were affected by her impairments, and observed from Plaintiff's testimony at the hearing that she engaged in wide and varied activities of daily living. (T at 23). Such activities included preparing meals, performing household chores, light housework, and shopping. (T at 23).

The ALJ's decision shows he reviewed Plaintiff's complaints of pain and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of disabling pain and other limitations.  Plaintiff argues that the ALJ failed to explicitly state the reasons why he found her subjective complaints less than fully credible.  However, a reading of the ALJ's entire decision in context provides the basis for his finding that Plaintiff's statements were not entirely credible.

In sum, the Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that her pain and other symptoms were disabling. Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (T at 21-23). See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).

### c.    Determination Regarding Residual Functional Capacity

Plaintiff also argues that the ALJ reached an improper conclusion regarding her residual functional capacity ("RFC").  Specifically, she notes that Dr. Struck conducted a RFC assessment and concluded that Plaintiff does not have the ability to perform sedentary work.  Dr. Struck was the only physician to render an opinion concerning Plaintiff's RFC.

13

Thus, Plaintiff argues that the ALJ erred by concluding that she had an RFC greater than that established by any physician who examined her.

As noted above, after reviewing the medical evidence, the ALJ concluded that Plaintiff "has the residual functional capacity to perform a wide range of sedentary work." (T at 22).  The ALJ found that Plaintiff can "lift and carry up to 10 pounds occasionally, can stand or walk for up to 2 hours, and can sit for up to 6 hours of an 8-hour workday."  (T at 22).  In addition, the ALJ determined that Plaintiff can "push or pull up to 10 pounds occasionally," but "cannot perform work that requires ladders, scaffolds, balancing, crouching or crawling and she can only occasionally performing (sic) stooping and kneeling." (T at 22).

The ALJ's finding in this regard was supported by substantial evidence.  Although Plaintiff clearly suffers from cervical and lumbar impairments, the physical examination reports were largely normal and indicative of an ability to perform sedentary work.  By way of example, Dr. Sethi, Plaintiff's treating neurosurgeon, noted normal or "good" results upon a motor examination, physical exam, and sensory exam. (T at 143).  He opined that Plaintiff's reflexes were "[b]risk and symmetric." (T at 143).  At a subsequent examination, Plaintiff was noted to have "fairly good strength" with a "tolerable" symptom complex.  (T at 145).  Plaintiff completed a medical questionnaire, in which she indicated that she walks 1-2 miles per day as exercise.  (T at 118).  PA Walker examined Plaintiff on several occasions and opined that she could occasionally lift/carry up to 30 pounds and had no limitations with regard to her ability to stand, walk, or sit.  (T at 127).

Based upon the consideration of all of the evidence in Plaintiff's record, the Court finds that the ALJ properly determined that Plaintiff was not under a disability as defined

14

by the Act, and retained the residual functional capacity to perform sedentary work.

**d.    Ability to Perform Other Work in the National Economy**

The ALJ concluded that Plaintiff could perform her past relevant work as a telephone salesperson, because there are no requirements of such work that Plaintiff is unable to perform.  (T at 24).  However, out of an abundance of caution, because Plaintiff had only performed that work on a part-time basis, the ALJ continued his review to Step 5 of the process and determined that given Plaintiff's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy she can perform.  (T at 24).  In reaching this conclusion, the ALJ relied upon the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids").

Plaintiff argues that the ALJ should have utilized the testimony of a vocational expert rather than relying upon the Grids.  In support of this argument, Plaintiff notes that she has non-exertional impairments (*i.e.* pain, medication side effects) that render her unable to work.  The Court finds Plaintiff's argument unavailing for the following reasons:

First, because the ALJ found Plaintiff capable of returning to her past relevant work at Step Four of the sequential evaluation, he was not required to proceed to Step Five of the sequential evaluation to consider vocational factors such as age, education, and work experience. See 20 C.F.R. §§ 404.1560 and 416.960; see also Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir.1982). Thus, the Court finds the ALJ did not err by determining that Plaintiff could return to her past relevant work absent the testimony of a vocational expert.

Second, even assuming *arguendo* that a Step 5 analysis was necessary, the ALJ properly performed that analysis.  At Step 5, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age,

15

education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

   In this, and other SSI and DIB cases, the second part of this two part process is generally satisfied by referring to the applicable rule of the Grids. See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986). An ALJ may rely on the Grids for guidance in determining the range of work available to a claimant, even if the claimant has non-exertional limitations, as long as those limitations do not significantly erode the range of work that would otherwise be available to the claimant. Id. at 605.

   In the present case, as set forth above, the ALJ determined that Plaintiff retained the residual functional capacity to perform a wide range of sedentary work, notwithstanding her exertional and non-exertional impairments.  For the reasons set forth above, the Court finds that the ALJ's decision in this regard was supported by substantial evidence.  As such, the ALJ was permitted to rely on the Grids in the second part of the two parts of step five in the sequential evaluation to assess that there were a significant number of jobs in the sedentary work category in both the national and local economy that Plaintiff could perform. See SSR 83-10; SSR 85-15; see also Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir.1986).

   Thus, the Court finds the ALJ properly relied on the Grids when he made his determination that a significant number of jobs existed in the national and local economy that Plaintiff could perform. Further, the ALJ was not required to engage the services of a vocational expert to assess the number of jobs in the national and local economy, because under the guidelines established in SSR 83-10 and SSR 85-15, the jobs available to

16

Plaintiff in the sedentary work category were not significantly eroded by her limitations.

## IV. CONCLUSION

After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physician and nurse practitioner, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because it further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 5, 2009

Syracuse, New York

17

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 5, 2009

Victor E. Bianchini
United States Magistrate Judge